**NAVEGAR, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. 95–550 RCL.**

United States District Court,
District of Columbia.

Dec. 1, 1997.

Richard Ernes Gardiner, Washington, DC, for Plaintiffs.

Sandra Marguerite Schraibman, U.S. Dept. of Justice, Federal Programs Branch, Washington, DC, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

LAMBERTH, District Judge.

This matter comes before the court on plaintiffs' Motion for Leave to Amend Complaint.  Upon consideration of the submissions of the parties and the relevant law, plaintiffs' motion is denied.

### I.  *Background*

On March 3, 1995, federally-licensed firearm manufacturers Navegar, Inc. ("Intratec") and Penn Arms, Inc. ("Penn Arms")

filed a complaint in this court seeking a declaratory judgment that certain provisions of the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 ("the Act"), were outside of Congress' enumerated powers, unconstitutional Bills of Attainder, and vague in violation of the Due Process Clause of the Fifth Amendment to the United States Constitution. The government filed a motion for summary judgment asserting that plaintiffs' pre-enforcement constitutional challenge to certain provisions of the Act did not constitute a justiciable controversy under Article III as plaintiffs failed to demonstrate a genuine threat of prosecution. Upon consideration of the arguments presented, this court granted the government's motion and dismissed this case in a Memorandum Opinion and Order issued in February 1996. *Navegar, Inc. v. United States,* 914 F.Supp. 632 (D.D.C.1996).

Plaintiffs appealed the decision of this court to the Court of Appeals for the District of Columbia Circuit. *Navegar, Inc. v. United States,* 103 F.3d 994 (D.C.Cir.1997). The Court of Appeals first considered the justiciability of the plaintiffs' challenges to the sections of the Act specifically mentioning firearms produced by Intratec and Penn Arms by name. By its terms, the Act makes it unlawful for a person to "manufacture, transfer, or possess a semiautomatic assault weapon." 18 U.S.C. § 922(v)(1). "Semiautomatic assault weapons" are defined to include "any of the firearms, or copies or duplicates of the firearms in any caliber, known as ... INTRATECTEC–9, TEC–DC9 and TEC–22, and ... revolving cylinder shotguns, such as (or similar to) the Street Sweeper and Striker 12." 18 U.S.C. § 921(a)(30)(A). In effect, these portions of the Act make it unlawful to manufacture or transfer Intratec's "TEC–9," "TEC–DC9," and "TEC–22" models, and Penn Arms' "Striker 12" model. 18 U.S.C. § 922(v)(1) and §§ 921(a)(30)(A)(viii) and 921(a)(30)(A)(ix). Because of the weapon-specific nature of these sections, the Court of Appeals considered plaintiffs' challenges to these provisions separately from the challenges based on the generally-worded provisions of the Act.

The Court of Appeals reversed this court's conclusion dismissing plaintiffs' pre-enforcement challenge to these provisions of the Act for lack of a justiciable controversy. *Navegar,* 103 F.3d at 999–1001. The Court of Appeals noted that the Act effectively singles out both Intratec and Penn Arms as intended targets by prohibiting the production of weapons that only these companies manufacture. The Court of Appeals commented that 'the applicability of the statute to appellants' business [is] indisputable: if these provisions of the statute are enforced at all, they will be enforced against these appellants for continuing to manufacture and sell the specified weapons. *Id.* at 1000. For this reason, the Court of Appeals determined that the imminent threat of prosecution could be deemed speculative only if it was likely that the government would simply decline to enforce these provisions of the Act—a conclusion that the Court of Appeals was unwilling to reach. As such, plaintiffs demonstrated an imminent threat of prosecution under this portion of the Act and the controversy was ripe for adjudication. Thus, the Court of Appeals was satisfied that the controversy was justiciable.

The Court of Appeals reached a contrary conclusion with respect to plaintiffs' pre-enforcement challenges to those portions of the Act identifying prohibited materials by general characteristics only. Plaintiffs sought to challenge the constitutionality of other portions of the Act referring to weapons and accessories sharing certain features, rather than to particular brands and models of weapons. Specifically, plaintiffs allege that the Act exceeds the powers of Congress enumerated in the Constitution and that the Act is too vague to comply with the Due Process Clause of the Fifth Amendment to the Constitution. The enumerated powers claim presented by plaintiffs challenges the portion of the Act outlawing "large capacity ammunition feeding devices," defined as ammunition magazines "that ha[ve] a capacity of ... more than 10 rounds of ammunition." 18 U.S.C. §§ 922(w)(1) and 921(a)(31). Plaintiffs' vagueness claims are centered on the portions of the Act that prohibit firearms "known as ... revolving cylinder shotguns," 18 U.S.C. § 921(a)(30)(A)(ix), and semiauto-

652

matic pistols that have two out of five listed characteristics. 18 U.S.C. § 921(a)(30)(C).

The Court of Appeals agreed with this court's conclusion that plaintiffs were unable to show an imminent threat of prosecution under the portions of the Act describing the outlawed items in general categorical terms and thus, the challenges to these portions of the Act were determined to be non-justiciable at that time. *Navegar*, 103 F.3d at 1001–02.

Presently, plaintiffs seek leave to amend their complaint in an effort to demonstrate their challenges to the generic portions of the Act are justiciable in light of the Court of Appeals' prior decision in this case. For the reasons stated below, plaintiffs' motion to amend their complaint is denied.

## II. *Analysis*

Rule 15(a) of the Federal Rules of Civil Procedure states in relevant part that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party ... and leave shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court defined the term "when justice so requires" and explained that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... *futility of amendment,* etc.—the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182, 83 S.Ct. at 230 (emphasis added). Accordingly, "[w]ithin these bounds, a district court has discretion to grant or deny leave to amend under Rule 15(a)." *Atchinson v. District of Columbia,* 73 F.3d 418, 426 (D.C.Cir.1996). *See also Foman,* 371 U.S. at 182, 83 S.Ct. at 230 ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason ... is not an exercise of discretion."); *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C.Cir.1996) (indicating that the granting or denial of leave to amend is committed to the district court's discretion).

As the Supreme Court stated in *Foman,* a motion to amend a complaint should be denied when such an amendment would be futile. "It has been repeatedly held that an amended complaint is 'futile' if the complaint as amended would not survive a motion to dismiss." *Monroe v. Williams,* 705 F.Supp. 621, 623 (D.D.C.1988) (citing *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.1983)). *See also Graves v. United States,* 961 F.Supp. 314, 317 (D.D.C.1997) ("A motion to amend the Complaint should be denied as 'futile' if the complaint as amended could not withstand a motion to dismiss.").

In the instant case, the government contends that plaintiffs' Motion for Leave to Amend Complaint should be denied as futile on the basis that "the proposed Second Amended Complaint would no more confer jurisdiction on this court to bring the disputed challenges than did the First Amended Complaint." Opp. to Mot. for Leave to Amend Compl. at 2. The government asserts that the new facts proffered by plaintiffs remain insufficient to satisfy the requirements for justiciability set forth by the Court of Appeals in its prior consideration of this issue in this case.

In its assessment of whether plaintiffs had standing to pursue a pre-enforcement challenge of the Act, the Court of Appeals differentiated between the provisions of the Act that specifically referenced firearms and ammunition produced by Intratec and Penn Arms and the provisions that contained generic prohibitions or identified prohibited materials by characteristics rather than by manufacturer or brand name. As stated, the Court of Appeals concluded that plaintiffs lacked standing to challenge the latter group of prohibitions because it could not be shown that these companies faced an imminent threat of prosecution under the Act. In the absence of language specifically referencing the firearms produced by plaintiffs, the Court of Appeals concluded that prosecution became far less imminent. *Navegar,* 103 F.3d at 1001 ("[Plaintiffs] cannot invoke the one factor that we found most significant in our analysis of the other challenges—the

statute's own identification of particular products manufactured only by the [plaintiffs].").

The Court of Appeals, however, did not completely foreclose a pre-enforcement challenge to the portions of the Act identifying prohibited materials by characteristics only. The Court of Appeals indicated that it would be possible for plaintiffs to establish standing to challenge these portions of the Act if Intratec and Penn Arms could demonstrate a "special priority placed upon preventing these parties from engaging in specified conduct." *Id.* at 1001. This language makes it clear that in order to establish an imminent threat of prosecution, plaintiffs must demonstrate that some portion of the challenged Act or actions taken by the government in enforcing this Act create a heightened prospect of enforcement with respect to either Penn Arms or Intratec when compared with all other manufacturers who may possibly engage in the proscribed conduct. This is a burden that plaintiffs cannot meet.

A comparison of the language of the First Amended Complaint and the Proposed Second Amended Complaint demonstrates that plaintiffs have simply repackaged arguments under the label of "new facts" that have been previously rejected by both this court and the Court of Appeals. While it is true that the opinion of the Court of Appeals did not completely foreclose the possibility that plaintiffs could establish standing, plaintiffs' Proposed Second Amended Complaint simply fails to present any facts reflecting that a special priority has been placed on either Intratec or Penn Arms under the portions of the Act identifying prohibited firearms or materials by characteristics only. Both Intratec and Penn Arms allege that §§ 922(v)(1) and (4) and § 922(w)(1) prohibit the manufacture and sale of the TEC DC–9, TEC 22, Striker 12, Striker 12S, Striker 12E, Striker 12SE, and 32 round magazines—firearms and ammunition manufactured exclusively by Intratec and Penn Arms. What appears to be the focal point of plaintiffs' argument is the contention that the Bureau of Alcohol, Tobacco, and Firearms ("ATF") would criminally prosecute or revoke the licenses of either Intratec or Penn Arms if

these parties continued to manufacture these products. Furthermore, plaintiffs assert that but for this threat of prosecution, the manufacture of the products would begin immediately. Pl.'s Reply to Opp. to Mot. for Leave to Amend Compl. at 2–4.

Notwithstanding these "new facts," it is apparent that plaintiffs simply misconstrue the requirements for standing set forth by the Court of Appeals in its consideration of this issue. The language of the Court of Appeals' opinion indicates that standing to bring a pre-enforcement challenge of the constitutionality of the generic provisions of the Act requires some showing of an imminent threat of prosecution under the Act. In the absence of a specific reference to a particular manufacturer or product by the sections of the Act at issue, the Court of Appeals specified that standing could be demonstrated by a showing that a "special priority" has been placed upon preventing a manufacturer from engaging in the proscribed conduct. Thus, plaintiffs must present some facts indicating that they face a greater or more imminent threat of prosecution than do other manufacturers of these same products. In the absence of such facts, the concerns expressed by the Court of Appeals are still manifest— "[the] generic portions of the Act could be enforced against a great number of weapon manufacturers or distributers ... [and] nothing in these portions [of the Act] indicates any special priority placed upon preventing [Intratec and Penn Arms] from engaging in specified conduct." *Navegar,* 103 F.3d at 1001. All other manufacturers of the firearms and ammunition covered under these portions of the Act could make identical claims. In effect, plaintiffs have done nothing to differentiate themselves in any way from any other manufacturer of these products.

In light of these considerations, the information contained in the Proposed Second Amended Complaint fails to establish that plaintiffs would have standing to assert a pre-enforcement challenge to the constitutionality of the generic portions of the Act identifying prohibited materials by characteristics only. Plaintiffs make no showing that either the Act or the government's enforce-

ment efforts under the Act constitute a "special priority" vis-a-vis other manufacturers.

### III. *Conclusion*

For the reasons stated above, plaintiffs' motion to further amend their complaint is DENIED and plaintiffs' pre-enforcement constitutional challenge to the generic provisions of the Act identifying prohibited materials by characteristics only remains DISMISSED. It is further

ORDERED that defendant's Motion for Protective Order is DENIED as moot; and it is further

ORDERED that the parties are to submit a supplemental report as required by Local Rule 206(d) within 20 days of this date in accordance with this court's order dated August 28, 1995.

SO ORDERED.