[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11861
Non-Argument Calendar
_____

D.C. Docket No. 1:15-cv-20821-UU


MARIO JIMENEZ,

                                                              Plaintiff-Appellant,

versus

KAREN WIZEL,
Mother; and in re: the support and welfare of Mario
Simon Jimenez-Wizel and Karen Nicole Jimenez-Wizel,
DEPARTMENT OF CHILDREN AND FAMILIES (DCF),
THEREZA HERNENDEZ,
DCF Investigator,
MELYSSA LOPEZ,
DCF Case Coordinator,
YVETTE B. REYES MILLER, ESQ., et al.,

                                                              Defendants-Appellees.
_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 17, 2016)

Before HULL, WILSON, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Mario Jimenez, proceeding pro se, appeals the district court's dismissal of his complaint for failure to state a claim. Jimenez filed this suit in the District Court for the Southern District of Florida, requesting removal of a state court child custody dispute between him and his ex-wife, Karen Wizel. Jimenez alleged (1) that the state court violated his First Amendment right to freely exercise his religion and his Fourteenth Amendment liberty interest in parenting his two children when it ordered he could only have supervised visitation based on Jimenez's religious practices and beliefs; and (2) the state court violated his due process rights by failing to give him an opportunity to contest the allegations against him or adequate notice of the hearing. The district court initially dismissed his complaint for failure to state a claim but provided Jimenez with an opportunity to amend. In his amended complaint, Jimenez more specifically raised claims under 42 U.S.C. §§ 1983 and 1985, alleging that various parties to the state custody action, as well as Wizel, conspired to violate these same constitutional rights.

The district court determined it lacked jurisdiction over the state court proceedings because child custody disputes are not within the federal courts' original jurisdiction, and it dismissed the remainder of Jimenez's amended

2

complaint for failure to state a claim.  On appeal, Jimenez argues that the district court erred in both determinations.  After a thorough review of Jimenez's amended complaint and brief, we conclude that the district court committed no reversible error.  Therefore, we affirm.

I

At every stage in the proceeding, we review de novo the jurisdiction of not only our court but also the district court.  *See Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 779–80 (11th Cir. 2005).

Those matters over which the federal courts have original jurisdiction may be removed from state court to federal court.  *See* 28 U.S.C. § 1441(a).  The federal courts have original subject matter jurisdiction over federal questions.  28 U.S.C. § 1331.  In addition, those matters regarding enforcement of constitutional rights related to equality may properly be removed to federal court.  *See* 28 U.S.C. § 1443.  The Supreme Court has interpreted § 1443 to apply "only to rights that are granted in terms of [racial] equality and not to the whole gamut of constitutional rights."  *Georgia v. Rachel*, 384 U.S. 780, 792, 86 S. Ct. 1783, 1790 (1966); *accord Alabama v. Conley*, 245 F.3d 1292, 1295 (11th Cir. 2001) (per curiam).  These rights are distinguishable from those vindicated by the due process clause and 42 U.S.C. § 1983, which "confer equal rights in the sense . . . of bestowing them upon all."  *Rachel*, 384 U.S. at 792, 86 S. Ct. at 1790 (internal quotation

3

marks omitted).  *Rachel* set out a two-pronged test to determine whether removal is proper under § 1443(1):  "First, the petitioner must show that the right upon which the petitioner relies arises under a federal law providing for specific civil rights stated in terms of racial equality.  Second, the petitioner must show that he has been denied or cannot enforce that right in the state courts."  *See Conley*, 245 F.3d at 1295 (internal quotation marks and citation omitted).

Here, Jimenez sought to remove to federal court a child custody dispute still pending in Florida state court, citing, *inter alia*, to 28 U.S.C. §§ 1331, 1441, and 1443 as the basis for federal subject matter jurisdiction.  The district court held it lacked jurisdiction to review the state court action.  We hold that the district court was correct in ruling that removal of the child custody dispute was improper under §§ 1441 or 1443.

The child custody dispute is not a matter arising under the original jurisdiction of the federal courts because it is not an action "arising under the Constitution, laws, or treaties of the United States."  *See* 28 U.S.C. § 1331.  Though Jimenez asserts that he is not seeking modification of a child custody degree, the violations he alleges stem in whole from the ongoing state court's adjudication of the dispute between him and his wife regarding the forthcoming custody arrangement.  Therefore, removal under § 1441 would be improper.  *See also Ankenbrandt v. Richards*, 504 U.S. 689, 703–04, 112 S. Ct. 2206, 2215 (1992)

(holding that the domestic relations exception to diversity jurisdiction divests federal courts of jurisdiction to review child custody orders under § 1332, as well).

Further, the state court case that Jimenez wishes to remove to federal court does not implicate equality-based rights cognizable under § 1443. It is not clear whether Jimenez sought to remove under § 1443(1) or § 1443(2), but removal is improper under either provision. For purposes of § 1443(1), Jimenez only alleged violations of his rights to due process, free exercise of religion, and Fourteenth Amendment liberty interest as a parent, which are "broad constitutional guarantee[s] of general application," rather than rights implicating racial equality.[1] *See Rachel*, 384 U.S. at 792, 86 S. Ct. at 1790. Thus, he fails to satisfy the first prong of *Rachel*. *See Conley*, 245 F.3d at 1295–96. Separately, removal under § 1443(2) would be improper because Jimenez is not a federal officer or agent. *See City of Greenwood v. Peacock*, 384 U.S. 808, 823–24, 86 S. Ct. 1800, 1809–10 (1966).

For the foregoing reasons, we conclude the district court did not err in concluding it lacked jurisdiction over the pending state court child custody

---

[1] We have assumed, without ever holding, that § 1985(3) qualifies as an equal rights statute for purposes of § 1443(1). *See Conley*, 245 F.3d at 1296. However, Jimenez has not provided sufficient allegations to make facially plausible that he cannot pursue this claim in state court, thus failing the second part of the *Rachel* test. *See id.* Accordingly, we need not address today whether § 1985(3) definitively qualifies as an equal rights statute for purposes of § 1443(1).

dispute.[2]  Separately, we agree that the district court had jurisdiction over those claims Jimenez raised under §§ 1983 and 1985, because these are federal statutes providing federal question jurisdiction.  *See, e.g.*, *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 279, 97 S. Ct. 568, 572 (1977).

We next determine whether Jimenez properly stated a claim for relief under either federal cause of action.

## II

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "[N]aked assertions devoid of further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted and alteration adopted).  In reviewing whether a complaint meets the pleading requirements, "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys

---

[2] To the extent Jimenez seeks injunctive relief from the state court's order granting the emergency motion suspending time-sharing with his children, we cannot provide such relief. The state judicial proceedings remain ongoing, implicate important state interests in the family, and there remains adequate opportunity for Jimenez to raise his constitutional challenges throughout the ongoing proceedings as well as the state appellate courts.  *See Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct. 2515, 2521 (1982); *31 Foster Children v. Bush*, 329 F.3d 1255, 1274–75 (11th Cir. 2003).

and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

We review de novo a dismissal for failure to state a claim upon which relief may be granted, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).

## A

In his amended complaint, Jimenez seeks to bring a claim under 42 U.S.C. § 1983 against several actors:  Wizel, the mother of his children; Florida Department of Children and Families (DCF); DCF investigator Thereza Hernandez; DCF case coordinator Melyssa Lopez; attorneys Yvette B. Reyes Miller, Ana C. Morales, Margarita Arango Moore, and Sabrina Salomon; Reyes & Arango Moore, P.L. (R&AM) and the Legal Defense Firm of South Dade, P.L. (LDF); Vanessa L. Archer; Archer Psychological Services P.A. (APS);  guardian ad litem Anastacia Garcia; and the Law Office of Anastasia M. Garcia, P.A. (LOAG) (collectively, the Defendants).  He alleges that the Defendants violated his First Amendment rights, Fourteenth Amendment due process rights, and other unidentified federal rights.

To state a claim for relief under § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United

7

States.  *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).  A person acts under color of law when he or she is "acting with power possessed by virtue of the defendant's employment with the state."  *See Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995).  Although state employment is "generally sufficient" to make a person a state actor, "[n]ot all actions by state employees are acts under color of law."  *Id.* at 1523.  A private party may be held liable as a state actor in only three circumstances:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ("State compulsion test"); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ("public function test"); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise ("nexus/joint action test").

*See Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (internal quotation marks omitted and alteration adopted).

The district court did not err in dismissing Jimenez's § 1983 claim against Wizel, Reyes Miller, Morales, Arango Moore, Salomon, Archer, Garcia, LDF, R&AM, LOAG, and APS because they are private parties, and Jimenez did not properly plead any allegations that the circumstances satisfy one of the three tests to transform them into state actors.  *See id.*; *see also Higdon v. Smith*, 565 F. App'x 791, 793 (11th Cir. 2014) (per curiam) (explaining that guardian ad litem was not a

8

state actor under any of the three tests set forth in *Rayburn*).  In addition, the district court did not err in ruling that Jimenez failed to state a claim against DCF. If DCF is a state agency, then it is entitled to sovereign immunity under the Eleventh Amendment.  *See Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1520 (11th Cir. 1983).  Even if it is not a state agency, though, Jimenez's claim still fails because the only allegation he raised was that DCF is liable for the actions of its agents, and "[r]espondeat superior or vicarious liability will not attach under § 1983."  *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203 (1989).

Lastly, Jimenez failed to state a claim against Hernandez and Lopez. Accepting the facts in the light most favorable to Jimenez, Hernandez and Lopez may be considered state actors by virtue of their alleged employment at DCF. Jimenez argues that Hernandez and Lopez violated his parental right to make decisions pertaining to "the care, custody, and control" of his children, *see Troxel v. Granville*, 530 U.S. 57, 66, 120 S. Ct. 2054, 2060 (2000) (plurality opinion), without due process when they interviewed his minor children without receiving his consent or providing him notice, and then gave a copy of the resulting report to Wizel's attorneys without providing him an opportunity to object to any conclusions in the report.  Even accepting these allegations as true, Jimenez has not stated a plausible claim for relief under § 1983.

9

There are instances in which the First Amendment's freedom of religion intersects with the Fourteenth Amendment's due process protections of parental rights, and a parent's interest subsequently sounds under both the First and Fourteenth Amendments. *See Prince v. Massachusetts*, 321 U.S. 158, 164–66, 64 S. Ct. 438, 441–42 (1944). However, the fact that religious convictions underpin a parent's interest in raising his children does not insulate him from some governmental interference in the family relationship. *See id.* at 166, 64 S. Ct. at 442; *Foy v. Holston*, 94 F.3d 1528, 1536 (11th Cir. 1996). The constitutional guarantee to due process requires that a parent receive "timely notice, in advance of a hearing in which parents' rights to custody are at stake." *Dykes v. Hosemann*, 743 F.2d 1488, 1494 (11th Cir. 1984). The plaintiff-parent must adequately allege that his constitutional right was deprived without adequate process. *See, e.g.*, *Novak v. Cobb Cty.-Kennestone Hosp. Auth.*, 849 F. Supp. 1559, 1567 (N.D. Ga. 1994).

Here, Jimenez did not properly allege that the relevant state actors denied him adequate process. Although Jimenez alleges that interviewing the minor children without his consent or notice is a deprivation of due process, we disagree. The alleged interview arose in the middle of an ongoing child custody dispute, amidst allegations that Jimenez was mistreating his children, and Jimenez failed to plead any connection between the interview and the purported deprivation of his

10

constitutional parental rights.  Further, the alleged provision to Wizel's attorneys of a copy of a report generated from that interview, without first allowing Jimenez to preemptively "correct" it, is not a deprivation of due process.  In the absence of additional, plausible, factual allegations tying a lack of process to the alleged deprivation of a constitutional right, Jimenez's complaint fails to assert a claim against Hernandez and Lopez under § 1983.  Therefore, we affirm the order of the district court as to Jimenez's § 1983 claim.

B

Jimenez also alleges that the Defendants conspired to violate his civil rights and seeks relief under 42 U.S.C. § 1985(2), (3).  We address each claim in turn. Section 1985(2) provides a cause of action for two types of conspiracies:  "[T]he first four clauses of [§] 1985(2) refer to conspiracies that are designed to obstruct the course of justice in any court of the United States" while "the last two clauses of [§] 1985(2) refer to conspiracies designed to deny or interfere with equal protection rights."  *See Bradt v. Smith*, 634 F.2d 796, 801 (5th Cir. Unit A Jan. 1981) (internal quotation marks omitted).[3]  To state a claim under § 1985(2), then, the plaintiff must either "show a nexus between the alleged conspiracy and a proceeding in federal court" or "show a racial or otherwise class-based

---

[3] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (holding that all decisions of the "old Fifth" Circuit handed down prior to the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

11

discriminatory animus." *Id.*; *cf. Kush v. Rutledge*, 460 U.S. 719, 726, 103 S. Ct. 1483, 1488 (1983) (no requirement to show class-based animus when plaintiff alleges a violation of the first part of § 1985(2)).  Irrespective of the type of conspiracy alleged, the plaintiff must provide sufficient allegations to make plausible that there was a "meeting of the minds between two or more persons to accomplish [the] common and unlawful plan." *See McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000) (en banc).

The district court concluded that Jimenez failed to state a claim under § 1985(2) because he provided insufficient allegations that any conspiracy that occurred was premised on class-based animus.  However, in so ruling, the district court misunderstood claims under § 1985(2) to always require evidence of class-based animus.  Contrary to the district court's reading, Jimenez's complaint attempts to allege *both* types of § 1985(2) conspiracies, only one of which requires sufficient allegations of class-based animus.  We conclude that the district court's error was harmless, however, because Jimenez failed to state a claim premised on either type of conspiracy recognized under § 1985(2).

Jimenez's complaint first alleges that Reyes and Morales conspired with Wizel to violate Jimenez's civil rights by procuring an emergency hearing based on an "inaccurate and misleading document[]" and without providing Jimenez proper notice, because notice was sent to the wrong address.  This type of

12

allegation sounds more in the first type of conspiracy recognized under § 1985(2) because it involves a judicial proceeding. However, the type of proceeding allegedly involved was one in *state court*, not federal court; this is not an allegation that properly forms a basis for relief under § 1985(2). *See Bradt*, 634 F.2d at 800 (describing the first type of conspiracy recognized under § 1985(2) as one pertaining to obstructions of justice in *federal* courts); *McAndrew*, 206 F.3d at 1035 n.2.

Separately, Jimenez alleges that several different actors conspired to violate his civil rights and discriminated against him on the basis of his Christian faith. This allegation sounds under the second half of § 1985(2). However, even assuming that discrimination on the basis of identification with a particular religious group could form the basis of a claim under § 1985(2), Jimenez's allegations prove conclusory in nature. For example, his complaint alleges that Dr. Archer conspired with persons unnamed to violate his civil rights by making a false DCF accusation pertaining to the burning of his daughter's legs with an iron, and that Dr. Archer's report, upon which the state court relied, falsely determined his religious beliefs to be "fanatical" in nature. Jimenez provides no statements connecting these two allegations, or otherwise indicating that Archer intended to discriminate against Jimenez on the basis of his religion. Moreover, Jimenez provides no statements indicating that the existence of a conspiracy is factually

13

plausible.  Rather, Jimenez provides only "naked assertions devoid of further factual enhancement," which is not enough.  *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (internal quotation marks omitted and alteration adopted).

Jimenez also seeks relief under § 1985(3).  To state a claim for relief under § 1985(3), a plaintiff must allege sufficient facts reflecting

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*See Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140, 1146–47 (11th Cir. 1996). For purposes of the second element, the plaintiff must properly plead an allegation that "some racial or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action."  *See id.* at 1147 (internal quotation marks omitted).

Although other circuits have recognized that a religious group may serve as a protected class for purposes of the second element of a § 1985(3) claim,[4] this circuit has not done so.  However, even assuming that being a member of a particular religious group provides a basis for a § 1985(3) claim, Jimenez's complaint still fails to state a claim because, as noted above, he provides no

---

[4] *Cf., e.g.*, *Colombrito v. Kelly*, 764 F.2d 122, 130–31 (2d Cir. 1985); *Taylor v. Gilmartin*, 686 F.2d 1346, 1357–58 (10th Cir. 1982); *Ward v. Connor*, 657 F.2d 45, 48 (4th Cir. 1981).

14

allegations that any two individuals conspired to deprive him of equal protection of the laws due to his religious beliefs. *See, e.g.*, *United States v. Moore*, 525 F.3d 1033, 1039–40 (11th Cir. 2008) (describing basic elements of a conspiracy); *see also Childree*, 92 F.3d at 1146–47 (listing the first two elements of a claim under § 1985(3) to be evidence of a *conspiracy* to deprive the plaintiff of equal protection of the law).

Therefore, the district court did not err in ruling that Jimenez failed to state a claim under § 1985(3).

III

In light of the foregoing, we affirm the district court's ruling that Jimenez failed to state a claim upon which relief may be granted.

**AFFIRMED.**